EXHIBIT B

THE STATE OF NEW HAMPSHIRE
SUPERIOR COURT

HILLSBOROUGH, SS
SOUTHERN DISTRICT

DOCKET NO.: 226-2020-CV-00270

DONALD WEED
8215 ORACLE RD., APT. 155
TUCSON, AZ 85704

v.

SPRAYING SYSTEMS, CO.
243 DANIEL WEBSTER HWY,
MERRIMACK, NH 03054

**JURY TRIAL REQUESTED**

**COMPLAINT**

### I.   NATURE OF THE ACTION

1. This action is brought by Donald Weed against Spraying Systems, Co. for disability discrimination and retaliation in violation of the Americans with Disabilities Act, Amendments Act of 2008 (the "ADA") and NH RSA 354-A, retaliation in violation of the Family and Medical Leave Act (the "FMLA") and wrongful termination by constructive discharge.

### II.   JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to NH RSA 491:7.

3. Venue is proper because the Defendant operates a manufacturing facility in Merrimack, New Hampshire and previously operated a facility in Hudson, New Hampshire. The Plaintiff worked at both facilities at different points in his tenure. Both facilities are situated in the Southern District of Hillsborough County. The events alleged in this complaint took place while the Plaintiff was employed by the Defendant in the Southern District of Hillsborough County.

1

4. In regard to the discrimination claims involved in this matter, the Plaintiff has exhausted his administrative remedies to the extent required by law and has received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission.

### III.   PARTIES

5. The Plaintiff is an adult Arizona resident, who formerly resided in New Hampshire, with an address of 8215 Oracle Road, Apt. 155, Tucson, AZ 85704.

6. The Defendant, Spraying Systems, Co., is a for-profit corporation incorporated in the State of Illinois with a principal New Hampshire location of 243 D.W. Highway, Merrimack, NH, 03054. The company has over 500 employees and is a covered employer under NH RSA 354-A, the ADA and FMLA.

### IV.   FACTS

7. Plaintiff Donald Weed began working for Spraying Systems Co. ("Spraying Systems") through a temporary staffing agency in 2014. In approximately May of 2015, Mr. Weed was hired as a full-time employee of the Defendant.

8. At the time Mr. Weed was compelled to resign from his employment with the Defendant, on or about July 29, 2019, he was employed as a welder making an hourly wage of $22.07 and an overtime wage of $33.10 per hour. Mr. Weed also received numerous employment benefits including, but not limited to, health insurance, life insurance, retirement plan and paid time off.

9. Mr. Weed performed his job well during his employment with the Defendant and received positive performance reviews.

10. During the final two or three years of Mr. Weed's employment with the Defendant, Mr. Weed worked under the supervision of Vice President Joe Ruelas.

11. In approximately late March or early April of 2019, Mr. Weed suffered from an inguinal hernia that required him to take time off of work in order to receive surgery. For this reason, he requested that the Defendant grant him time off for medical leave. The Defendant granted Mr. Weed's requested leave.

12. It was initially believed that Mr. Weed's recovery time would be relatively short, amounting to approximately two weeks and then a transition period of light duty. Unfortunately, Mr. Weed suffered complications in the form of extreme swelling and a hydrocele in his left testicle.

13. Said complications caused Mr. Weed to suffer excruciating pain and impacted the major life functions of walking, using the restroom, sleeping, bending, and moving.

14. Mr. Weed's health condition was sufficiently severe to qualify as a disability under the ADA and NH RSA 354-A. It also qualified as a serious health condition under the FMLA.

15. Mr. Weed's complications required that he take additional time off, which he requested from the Defendant and was granted.

16. Mr. Weed was able to return to work on or about May 13, 2019, well within the twelve weeks of protected leave he was entitled to under the FMLA.

17. Upon his return to work, Mr. Weed was confronted with incredible hostility from Mr. Ruelas. Mr. Ruelas yelled at Mr. Weed and told the Plaintiff that he should quit multiple times. Mr. Ruelas also told Mr. Weed that he was easily replaceable and that another employee, by the name of Robert, had already been trained to perform Mr. Weed's job.

18. As Mr. Ruelas' yelling continued, he began threatening Mr. Weed with physical violence. He told Mr. Weed several times: "I could kick your ass!" Mr. Ruelas also told Mr. Weed: "I would grab you by your swollen ball, squeeze it, and kick your ass!"

19. The hostile treatment Mr. Weed received on his first day back at work left him anxious and fearing for his physical safety. It also left Mr. Weed feeling very sad, particularly because he had been excited to return to work. Despite the abusive treatment, Mr. Weed hoped it would pass and continued working for the company to avoid suffering financial hardship.

20. From that point forward, Mr. Ruelas engaged in an ongoing pattern of belittling, insulting, and screaming at Mr. Weed.

21. On or about June 21, 2019, the company had recently opened its new Merrimack manufacturing location and Mr. Weed was performing weld inspection tasks in the new facility. While he was working, Mr. Weed noticed that a large amount of dangerous and toxic chemical fumes were filling the air. In an attempt to abate the fumes, Mr. Weed opened several doors to the building. Mr. Weed soon realized that the new building was not outfitted with a proper chemical fume extractor, which was creating the fume issue.

22. On or about June 24, 2019, Mr. Weed reported the fume issue to Mr. Ruelas and suggested that the company install a vent hood for safe fume extraction. Mr. Weed also suggested that the weld inspection chemicals should be temporarily moved outside.

23. In response, Mr. Ruelas exploded with anger and made Mr. Weed fear for his physical safety. Mr. Ruelas cursed at Mr. Weed as he screamed and moved his body very close to Mr. Weed.

24. Mr. Weed was so frightened and upset about the way that Mr. Ruelas acted that he called out of work the next day, approximately June 25, 2019.

25. On or about June 26, 2019, Mr. Weed returned to work and tried to move past Mr. Ruelas' abusive and threatening behavior toward him. During that day, Mr. Weed noticed a safety hazard in the form of employees using regular, chrome-plated sockets with a one-half-inch impact

gun, rather than impact-rated sockets. Mr. Weed understood that using an impact gun with chrome-plated sockets is dangerous. It increases the risk that a socket will shatter and send flying metal through the air, potentially causing injury.

26. Mr. Weed was afraid to report the socket issue to Mr. Ruelas, so he brought it to the attention of the safety manager instead. When Mr. Weed made his report to the safety manager, he asked that his name be kept anonymous in fear that he would suffer retaliation and possible physical violence from Mr. Ruelas if Mr. Weed's name was identified.

27. Despite Mr. Weed requesting confidentiality, the safety manager disclosed Mr. Weed's identity to Mr. Ruelas.

28. In response, Mr. Ruelas stormed into Mr. Weed's work area screaming and cursing at him. Mr. Ruelas moved very close to Mr. Weed, still screaming, and threatened to punch Mr. Weed in the face. He also told Mr. Weed multiple times that he needed to punch something and that Mr. Weed's face was his preferred target.

29. Mr. Weed was so frightened by the situation that he could not shake the anxiety for the next twenty-four hours and was barely able to sleep.

30. The next day, on approximately June 27, 2019, Mr. Weed reported Mr. Ruelas' behavior to the Defendant's new Facility President, Christy Hofherr. Ms. Hofherr told Mr. Weed that she just took over and could not do much in the short-term but would start an investigation the following month.

31. For the next few weeks, Mr. Weed continued to work at the facility but was constantly anxious. He was constantly afraid that Mr. Ruelas would explode in another rage. He also felt like he needed to look over his shoulder because Mr. Ruelas might attack him.

32. During those few weeks, Mr. Weed regularly felt sick to his stomach and became very sleep-deprived due to his anxiety about the situation. To make matters worse, several employees of the company had witnessed Mr. Ruelas' behavior toward Mr. Weed, so they regularly made fun of him and referred to him as "Joe's dog."

33. After a little more than four weeks of constant fear, anxiety and mental torment, Mr. Weed could no longer live with persistent worry and fear. He felt compelled to resign.

34. On or about July 29, 2019, Mr. Weed tendered his resignation.

35. When Mr. Weed resigned, Deb Bartol, an employee who performed human resources functions, asked Mr. Weed if he was resigning because he was tired of the abuse.

36. Due to the Defendant's unlawful actions in discriminating against Mr. Weed for his disability, retaliating against him for his use of FMLA leave and use of leave as a reasonable accommodation for his disability, and the Defendant's wrongful termination of Mr. Weed by constructive discharge, the Plaintiff has suffered and continues to suffer significant damages. Said damages include, but are not limited to, lost wages, lost benefits, emotional distress, humiliation, reputational harm, inconvenience, lost earning capacity, loss of life enjoyment and attorney's fees and costs. The Plaintiff is also entitled to enhanced compensatory damages based upon the wanton, malicious and oppressive nature of the Defendant's conduct. The Plaintiff also claims punitive damages, pursuant to the ADA, because the Defendant acted with malice and/or with reckless indifference to the Plaintiff's federally-protected right to be free from retaliation based upon his disability and use of leave as a reasonable accommodation. Additionally, the Plaintiff seeks liquidated damages due to the Defendant's bad-faith violation of the FMLA.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA (42 U.S.C. 12112 et al.) AND NH RSA 354-A

37. The Plaintiff repeats and realleges each allegation contained in the paragraphs above.

38. The Defendant is, and was at all times relevant, a private employer employing more than fifteen employees. Therefore, the Defendant is a covered employer under the Americans with Disabilities Act (the "ADA") and NH RSA 354-A.

39. Due to an inguinal hernia and complications from surgery, the Plaintiff suffered significant impairment to major life functions and was disabled within the meaning of the ADA and NH RSA 354-A, as described in the facts section above.

40. The Plaintiff was capable of performing all of the essential functions of his job with the reasonable accommodation of a short period of medical leave.

41. Due to the Plaintiff's disability and use of reasonable accommodations for said disability, the Plaintiff suffered a pattern of abuse, insult, ridicule and threats of physical violence from Vice President Joseph Ruelas.

42. Mr. Ruelas' discriminatory animus was evident in his threats to Mr. Weed, which included a threat to squeeze Mr. Weed's "swollen ball."

43. The Defendant is vicariously liable for Mr. Ruelas' behavior, due to the fact that Mr. Ruelas was a supervisor of Mr. Weed. As Vice President, Mr. Ruelas acted on behalf of the Company.

44. The Defendant is further liable due to its failure to take prompt and appropriate remedial action to correct the discriminatory hostile work environment caused by Mr. Ruelas' behavior.

45. As a direct and proximate result of Defendant's disability discrimination, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost wages, lost benefits, emotional distress, reputational harm, humiliation, inconvenience, loss of life enjoyment and lost earning capacity. Plaintiff is further entitled to attorney's fees, interest and costs.  Plaintiff is also entitled to enhanced compensatory damages under NH RSA 354-A based on the Defendant's willful or reckless disregard for the Plaintiff's rights.  The Plaintiff is further entitled to punitive damages, pursuant to the ADA, because the Defendant acted with malice and/or with reckless indifference to Mr. Weed's right to be free from discrimination.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADA AND NH RSA 354-A

46. The Plaintiff repeats and realleges each allegation contained in the paragraphs above.

47. The Plaintiff engaged in the protected conduct of requesting and utilizing medical leave as a reasonable accommodation for his qualifying disability, as described herein.

48. In retaliation for Mr. Weed's protected conduct, he was the subject of an ongoing pattern of abuse, insult, ridicule and threats of physical violence by Vice President Ruelas.

49. The close temporal proximity between Mr. Weed's protected conduct and the onslaught of hostile treatment he was subjected to is strongly indicative that the retaliatory behavior of Mr. Ruelas was motivated by Mr. Weed's protected activity.  Mr. Ruelas' references to Mr. Weed's disability in an insulting manner provide further support.

50. As a direct and proximate result of Defendant's retaliation against the Plaintiff in violation of the ADA and NH RSA 354-A, the Plaintiff has suffered and continues to suffer damages including, but not limited to, lost wages, lost benefits, emotional distress, reputational

harm, humiliation, inconvenience, loss of life enjoyment and lost earning capacity. Plaintiff is further entitled to attorney's fees, interest and costs.  Plaintiff is also entitled to enhanced compensatory damages under NH RSA 354-A based on the Defendant's willful or reckless disregard for the Plaintiff's rights.  The Plaintiff is further entitled to punitive damages, pursuant to the ADA, because the Defendant acted with malice and/or with reckless indifference to Mr. Weed's right to be free from retaliation for his legally protected conduct.

## COUNT III
## RETALIATION IN VIOLATION OF THE FMLA (29 U.S.C. §2611 et al.)

51. The Plaintiff repeats and realleges each allegation contained in the paragraphs above.

52. The Defendant is a private employer with fifty or more employees within the seventy-five mile radius of its Merrimack, NH, and former Hudson, NH, facilities.  Said Defendant maintained fifty or more employees for twenty or more weeks in the current and previous calendar year.  It is therefore a covered employer under the FMLA.

53. As described herein, the Plaintiff took a period of medical leave for a serious health condition that required surgery.  At the time he took his leave, he had worked for the Defendant for more than a period of twelve months and had worked more than 1250 hours in the twelve months preceding his leave.  Mr. Weed's leave was therefore entitled to FMLA protection.

54. In retaliation for Mr. Weed's protected leave, he was the subject of an ongoing pattern of abuse, insult, ridicule and threats of physical violence by Vice President Ruelas.

55. Mr. Ruelas' behavior began immediately upon Mr. Weed's return to work.  The fact that Mr. Ruelas told Mr. Weed to quit and claimed that someone else had already been trained to take his job, evidences the fact that Mr. Ruelas was motivated by Mr. Weed's protected conduct.

56. As a direct and proximate result of Defendant's retaliation against the Plaintiff in violation of the FMLA, the Plaintiff claims all damages to which he is entitled pursuant to the FMLA, including, but not limited to, lost wages (back pay and front pay), attorneys' fees, interest, and costs, and liquidated damages due to the Defendant violating the FMLA in bad faith.

## COUNT IV
## WRONGFUL TERMINATION

57. The Plaintiff repeats and realleges each allegation contained in the paragraphs above.

58. Public policy and both state and federal law supported Mr. Weed in requesting and utilizing protected leave for his serious medical condition and disability.

59. Public policy also supported Mr. Weed in making reports of significant safety hazards within the Defendant's facility, such as toxic chemical fumes and the possibility of injury from the improper use of tools.

60. In malicious retaliation for Mr. Weed's protected conduct, he suffered an ongoing pattern of abuse, insult, ridicule and threats of physical violence by Vice President Ruelas.

61. Due to the hostile work environment Mr. Weed experienced as described herein, he was reasonably compelled to resign. Therefore, the Defendant is liable for wrongful termination by constructive discharge.

62. As a direct and proximate result of the Defendant's wrongful termination of the Plaintiff, the Plaintiff has suffered and continues to suffer damages including, without limitation, lost wages, lost benefits, emotional distress, humiliation, reputational harm, inconvenience, lost earning capacity, loss of life enjoyment and attorney's fees and costs. The Plaintiff is also entitled to enhanced compensatory damages based on the wanton, malicious and oppressive nature of the Defendant's wrongful termination of the Plaintiff.

**WHEREFORE,** the Plaintiff, Donald Weed, respectfully prays this Honorable Court:

A. Schedule this matter for trial by jury;

B. Find the Defendant liable for each count alleged herein;

C. Award the Plaintiff all damages to which he is entitled, including enhanced compensatory damages, punitive damages and liquidated damages;

D. Award the Plaintiff his reasonable attorney's fees and costs; and

E. Grant such other and further relief as is just and equitable.

Respectfully submitted,
Donald Weed,
By his attorneys,
*BACKUS, MEYER & BRANCH, LLP*

Date: May 28, 2020            By:    /s/ Sean R. List            .
Sean R. List, NH Bar #266711
116 Lowell Street
Manchester, NH 03104
(603) 668-7272
slist@backusmeyer.com